## James Jacobs *vs.* Inhabitants of Bangor.

When a highway is defective, it becomes the duty of the town immediately to repair it; and if the repairs are of such character as to require the way to be wholly obstructed, the town would be justified in closing it until the repairs can be made. If the town concludes, that the repairs can be made without interrupting the travel, and proceeds to repair, without making known, that the way is not in a condition to be used, or that there is danger in using it, the liability of the town for injuries, as in other cases, remains; although there may not have been any other neglect on the part of the town, than that of having permitted the way to be out of repair.

The traveller cannot, however, when he perceives that a way is under repair and much incumbered for that purpose, and that but a narrow and difficult passage is open for him, claim to drive with the same rapidity, and to exercise only the same attention, which would be allowable on a smooth and unincumbered way ; but is bound to exercise that degree of watchfulness and caution, which men of ordinary prudence would do under such circumstances.

When irrelative or inadmissible testimony has been received at a trial, without objection, that it was considered by the jury affords no just cause for a new trial.

In cases where there is no certain measure of damages, the court will not substitute its own sense of what would be the proper amount for the verdict of a jury; and will not set aside a verdict, because the damages are excessive, unless there is reason to believe, that the jury were actuated by passion, or by some undue influence, perverting the judgment.

This was an action to recover damages sustained in *November*, 1835, by the plaintiff, while passing along a public street in *Bangor*, by reason, as he alleged, of the negligence of the defendants. There was no special averment in the declaration of the expense incurred by medical attendance and nursing. At the trial before Emery J. it appeared, that the injury took place in passing in the daytime over a portion of the road across a deep ravine, which had once been built up at great expense, but the earth had been pressed out, and had fallen down, and it became necessary to make repairs. The city had made a contract with one *Adams* to have the repairs made. The width of the elevation of the earth was 28 feet at the top and wider at the bottom. It had been deemed necessary, that trenches should be dug wherein to insert long pieces of timber to preserve the work, and secure the railing. While the work was in execution, very long string pieces of timber were laid

on each side of the embankment, or bridge, to be used as might be required, and a passage way of from ten to twelve feet in width was left in the middle for teams and carriages to pass. The plaintiff, (while they were repairing the bridge,) came from *Hermon*, a town in the vicinity, with the intention to pass to a mill beyond the bridge, and was riding over in an open two wheeled carriage, or gig without a top, drawn by one horse, which was trotting slowly. In passing along the narrow part between the timbers, one wheel scraped against the side of a log, and the plaintiff attempted to check the horse, but he went faster, and in going ten or twelve feet the other wheel struck the end of a stick which projected farther than the others, and the plaintiff was thrown out, and his leg was badly broken.

At the trial the defendants contended, that they were not liable, and requested the Judge to instruct the jury, that if they should find, that the defendants had taken reasonable care to provide a passage way over the bridge during the repairs, they are not liable. This was given as an instruction, but accompanied with the remark that if from the evidence the jury were satisfied, that the plaintiff was driving moderately, and with proper and ordinary care, and that the injury was occasioned by the incumbrance in the highway, without the fault of the plaintiff, the defendants were liable. The jury found for the plaintiff, and assessed damages in the sum of $1700. If the instructions ought to have been given without the accompanying addition, the verdict was to be set aside. There was a motion for a new trial, because the verdict was against evidence, and because the damages were excessive. The whole evidence was given in the report, but it is sufficiently noticed above and in the opinion of the Court, to understand any question of law arising in the case.

*Rogers* and *W. Paine*, for the defendants, contended, that the instructions requested, when they were given, should not have been attended with such additional ones, as destroyed the effect of them. As this accident happened, not from neglecting to repair the road but from doing what the law required of them, putting it in a state of repair, the city was not liable during the process, if they had taken reasonable care to provide a passage way over the bridge. The plaintiff must have seen, that the road was then in the process

of repairing, and therefore had notice of it, and if he chose to proceed upon the road in that state, he did so at his own risk, if the defendants made the repairs in a reasonable and careful manner. No action will lie against a town, unless an indictment can be supported for the same neglect. The jury must have misunderstood the charge of the Judge, if it required the plaintiff to use a degree of care in proportion to the difficulty he had to encounter, if he persisted in going over in that place instead of a little farther round. They also argued, that the verdict should be set aside, because it was against evidence, and because the damages were so excessive. They cited *Howard* v. *North Bridgwater*, 16 *Pick.* 189; *Smith* v. *Smith*, 2 *Pick.* 621; 2 *Taunt.* 314; 11 *East*, 60; *Coffin* v. *Phœnix Insurance Company*, 15 *Pick.* 291; *Shute* v. *Barrett*, 7 *Pick.* 82.

*A. G. Jewett*, for the plaintiff, insisted, that the instructions actually given by the Judge, were more favorable to the defendants, than if he had merely given the instruction requested. The Judge instructed the jury, that the plaintiff could not recover without he made use of due care, and was entirely free from fault or negligence himself, and there was fault or negligence in the defendants. The counsel also contended, that the verdict was fully warranted by the proof, and that the damages were moderate. He cited *Thompson* v. *Bridgwater*, 7 *Pick.* 188; *Smith* v. *Smith*, 2 *Pick.* 625; and *Frost* v. *Portland*, 2 *Fairf.* 271.

The opinion of the Court was drawn up by

SHEPLEY J.—This case is presented to the consideration of the Court to have the verdict set aside; 1. on account of the instructions given, and those withheld; 2. because the verdict is against the weight of evidence; and 3. because the damages are excessive. Whether the instruction requested should have been given will depend upon the duties of the parties under the circumstances proved in this case. The city was making the necessary repairs upon the street, and for that purpose was obliged to permit it to be in some degree incumbered, and in a less safe condition for travellers, than is ordinarily to be expected. And it is contended, that while the street was thus necessarily under repair the defendants are not lia-

Jacobs *v.* Bangor.

ble, unless they have been guilty of some neglect or want of due diligence in the business of repairing.

When a highway is defective, it becomes the duty of the town immediately to repair it. And if the repairs are of such a character as to require it to be wholly obstructed, as in building or repairing a bridge may be the case, it would be justified in closing it until the repairs can be made. When the town concludes, that the repairs can be made without interrupting the travel, and proceeds to repair without making known that the way is not in a condition to be used, or that there is danger in using it, its liability for injuries, as in other cases, must be regarded as continuing; although it may not have been guilty of any other neglect, than that of permitting the way to be out of repair. Its general liability under the statute is not in such cases suspended. And it cannot reasonably claim, that it should be, unless there is a necessity for it ; and then travellers should have notice of such necessity, that they may avoid the danger. If the way is not closed, and no notice is given, travellers may expect that it is practicable to pass it safely ; and that they will have the usual protection, which the law affords.

The traveller cannot however, when he perceives that a way is under repair and much incumbered for that purpose, and that but a narrow and difficult passage is open for him, claim to drive with the same rapidity, and to exercise only the same attention, which would be allowable in a smooth and unincumbered way. He is bound to exercise that degree of watchfulness and caution which men of ordinary prudence would under such circumstances. If he does that, the town will be responsible, whether it has or not unnecessarily obstructed the way. If this be a correct exposition of the duties of the parties, the instruction requested should not have been given without qualification. That annexed required of the plaintiff ordinary care, and that the injury should have been occasioned without his fault.

It is insisted, that the jury might not and probably did not understand, that the care required was to be in proportion to the difficulties to be encountered. It is so apparent to the mind of every man of business, that different degrees of attention and care are expected in circumstances exhibiting very different degrees of risk and danger, that the presumption that the charge to the jury was

misunderstood, cannot reasonably arise. It cannot be supposed, that a jury would consider the plaintiff, as without fault, if he used no more care, than would be required on a way in good repair and not incumbered. If the counsel perceived, that there was doubt, whether the jury would correctly understand the charge, they should have made a request for such a charge as would have removed it.

The evidence is in some degree contradictory, as to the situation of the timber upon the narrow passage left. According to the statement of the witness, *Day,* the injury was occasioned by the carriage wheel striking against the end of a stick of timber, which projected further than the others into the passage way. His statement respecting the conduct of the plaintiff does not appear to be entirely consistent. It is, that he and the plaintiff were probably talking, that he was looking at the men digging a trench, and plaintiff was looking another way ; and yet he says the plaintiff was using all the care any one could. It is now objected, that this is matter of opinion ; and so it is, and so appears to have been his statement respecting their talking ; and whether, when he was looking at the men digging in the road below, he could see what other way the plaintiff was looking, may admit of doubt. It all appears to have been received without objection ; and when so received it affords no just cause for a new trial, that it was considered by the jury. The whole circumstances were peculiarly within the province of the jury. There are no facts so certainly proved and so important and decisive, that a court can with confidence decide, that the verdict is unauthorized by the testimony, and it is in such cases only, that it should be set aside.

Are the damages so excessive as to make it the duty of the court to set aside the verdict for that cause ? This is a case where there is no certain measure of damages. The fractured limb is shortened. One joint is permanently injured. Whether it will ever be sound in other respects is by the surgeons regarded as doubtful. It is supposed in such a case, that a sum equal in value to the annuity paid by the government for the loss of a limb would have been a full compensation. And if the court had assessed the damages it is not improbable, that it would not have given a larger sum. But in cases of this description their verdict is not to be set

aside unless there is reason to believe, that the jury were actuated by passion, or by some undue influence, perverting the judgment. The Court cannot substitute its own sense of what would be proper for the verdict of the jury. There is no sufficient reason for concluding, that the jury were under any such influence as should destroy their verdict, and deprive the party of the right of having that verdict regarded as the measure of his compensation. It is said that the damages were probably made up partly by allowing for the loss of time, and for the expense of medical attendance and nursing, which losses are not alleged in the declaration. If so, the evidence was not objected to, and being in the cause it might be properly considered. As it is not unjust, that it should constitute an item of the amount of damages, it affords no reason for granting a new trial.

*Judgment on the verdict.*